**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────────

**JOHN COOKE,**

                                   **Plaintiff,**

                    **v.**

**STERN[1], Superintendent Programs,**
**Bare Hill Correctional Facility, and**
**MS. S. FLANAGAN,**

                                  **Defendants.**

**9:07-CV-1292**
**(Lead Case)**

**9:08-CV-74**
**(Member Case)**
**(GLS/GJD)**

───────────────────────────────────

**APPEARANCES:**                     **OF COUNSEL:**

**FOR THE PLAINTIFF:**

JOHN COOK
Pro Se
c/o Linda Manning
938 St. Nicholas Avenue
Apt 4B
New York, New York 16032

**FOR THE DEFENDANTS:**

HON. ANDREW M. CUOMO        CHRISTOPHER W. HALL
Attorney General for the            Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

───────────────────────

   [1] This defendant's name is properly spelled "Stearns," and the court will refer to him by the proper spelling of his name.

**Gary L. Sharpe**
**U.S. District Judge**

## <u>MEMORANDUM DECISION AND ORDER</u>

In this amended civil rights complaint, plaintiff alleges that defendants

violated his right to be free from cruel and unusual punishment when they

improperly assigned him to a prison job at Bare Hill Correctional Facility

that was not appropriate for his physical disability. (Dkt. No. 7).  Plaintiff

also claims that defendant Stearns assigned plaintiff to a housing unit that

was inappropriate for his disability when plaintiff returned from the hospital

after surgery.  Plaintiff seeks substantial monetary relief.

Presently before the court[2] is the defendants' motion for summary

judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 14). For the following

reasons, this court agrees with defendants in part and will dismiss one of

the claims in the amended complaint.

## <u>DISCUSSION</u>

**1.     <u>Summary Judgment</u>**

Summary judgment may be granted when the moving party carries its

burden of showing the absence of a genuine issue of material fact.  Fed. R.

---

[2] The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of this motion, and as such, any appeal taken from this order will be to the Court of Appeals for the Second Circuit.

Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990)(citations

omitted).  "Ambiguities or inferences to be drawn from the facts must be

viewed in the light most favorable to the party opposing the summary

judgment motion." *Id*.  However, when the moving  party has met its

burden, the nonmoving party must do more than "simply show that there is

some metaphysical doubt as to the material facts."  *Matsushita Electric*

*Industrial Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986).

*See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  At

that point, the nonmoving party must move forward with specific facts

showing that there is a genuine issue for trial. *Id*.

## 2.    **Facts and Procedural History**

Plaintiff's original complaint, resulting in these consolidated actions,

was filed on December 7, 2007. *Cooke v. Stern*, 9:07-CV-1292. (Dkt. No.

1).  On January 18, 2008, the Honorable William M. Skretny transferred a

case to this district that plaintiff filed in the Western District of New York.

*Cooke v. Flanagan*, 9:08-CV-74 (Dkt. No. 3).  A review of both plaintiff's

cases showed that they were challenging the same actions by almost the

same defendants.[3]  On January 28, 2008, this court ordered consolidation

_____

[3] Plaintiff did not name defendant Stearns in 9:08-CV-74.  The other two defendants were the same.

of the two actions. (Dkt. No. 6 in 9:07-CV-1292).  In that consolidation

order, the court also directed plaintiff to file a "consolidated amended

complaint." *Id.*  The court also stated that the lead case would be 9:07-CV-

1292, and that all further papers should be filed in that action.

Plaintiff complied with this court's order and filed a consolidated

amended complaint on February 12, 2008. (Dkt. No. 7).  On March 12,

2008, this court ordered the dismissal of defendant Mullerville, R.N. from

the consolidated action,[4] and further ordered service of the amended

complaint on the remaining two defendants: Lawrence Stearns, Deputy

Superintendent of Programs at Bare Hill Correctional Facility; and Senior

Corrections Counselor, Sharon Flanagan.

In plaintiff's amended complaint he states that on August 18, 2007,

he was assigned to work in the mess hall at Bare Hill Correctional Facility

by defendant Flanagan, who was in charge of the Program Committee.

Amended Complaint (AC).  Plaintiff states that he asked not to be assigned

to the mess hall because his foot had been recently amputated and he had

a prosthetic leg, making it difficult for him to stand and walk.  Plaintiff states

---

[4] Defendant Mullerville was dismissed from the action because the amended complaint did contain any allegations of wrongdoing against Nurse Mullerville.  In fact, other than in the caption, defendant Mullerville was not mentioned in the amended complaint at all.

4

that he was removed from the program on September 14, 2007, only after medical staff found an 'infection"[5] on September 12, 2007.  On October 17, 2007, plaintiff was taken to an outside hospital because he had a temperature of 104 degrees due to the infection.

Plaintiff states that while he was in the hospital, he appears to claim that he had to have an operation to remove another four to six inches from his "Right Stump."  Plaintiff was returned to Bare Hill on October 24, 2007, he was given crutches, and he was advised that he would need to have his bandages changed periodically.  Plaintiff states that he was housed in A-1 dormitory, and that he had to use his crutches to walk "back and forth" in order to get the bandages changed.  Plaintiff states that he requested an escort, but was refused.  Plaintiff claims that on October 31, 2007, he was walking with his crutches to get his bandages changed, and he fell.

Plaintiff states that it is his "thought," that if he had not been placed in a "hazardous program," or if he had been placed in a medical facility as he requested, he would not have been injured.  Plaintiff alleges that after his fall, he was finally moved to Franklin Correctional Facility, which is a

---

[5] The court assumes that the infection was in the area of the amputation, although the amended complaint is not clear on this fact.  The court makes this assumption because later in the amended complaint, plaintiff states that as a result of his later surgery, four or five inches were removed from the "Right Stump."

medical facility across the street from Bare Hill.

In the "Relief" section of plaintiff's complaint, plaintiff states that he is suing "State Corrections,"[6] "Bare Hill Medical," and defendant Flanagan for their failure to place plaintiff in an "unassigned program status" until his leg became infected.  Plaintiff states that he is suing defendant Stearns for not providing plaintiff with proper housing after he returned from the hospital.  Finally, plaintiff states that he is suing "Medical" for not "seeing to" plaintiff's needs as a recent amputee.  Plaintiff states that he is suing "Bare Hill" for not moving plaintiff until his fall on October 31, 2007.

### 3.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action.  This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that

---

[6] Plaintiff did not name "State Corrections" or "Bare Hill Medical" in the caption of the amended complaint.  In any event, any claims against the Department of Correctional Services or against an entire medical department would be barred by the Eleventh Amendment. *See Santiago v. New York State Dep't of Correctional Services,* 945 F.2d 25, 28 n.1 (2d Cir. 1991)(claims against agencies of the State barred by the Eleventh Amendment).

are not available in prison administrative proceedings. *Id.* at 675.  The

failure to exhaust is an affirmative defense that must be raised by the

defendants. *Scott v. Del Signore*, 2005 U.S. Dist. LEXIS 6070, *12-15

(W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman*, 380 F.3d

691, 695 (2d Cir. 2004)).  As an affirmative defense, it is the defendants'

burden to establish that plaintiff failed to meet the exhaustion requirements.

*Id.* at *12-13 (citing *Giano*, 380 F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23 (2007), the

Supreme Court held that in order to properly exhaust an inmate's

administrative remedies, he must complete the administrative review

process in accordance with the applicable state rules. *Id.* (citing *Woodford

v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper"

exhaustion means that the inmate must complete the administrative review

process in accordance with the applicable procedural rules, including

deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at

90-103.  In *Woodford*, the Court concluded that the inmates did not

properly exhaust their administrative remedies when their grievances were

dismissed because the inmates had missed the deadlines set forth in the

grievance procedure. *Id.* at 93.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b). An inmate now has twenty one (21) days within which to file a complaint. An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*.        § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id*. § 701.3(a)(Inmate's Responsibility).

Although it has been argued that after *Woodford*, no exceptions to the exhaustion rule exist, the courts in the Second Circuit have not interpreted *Woodford* so strictly. Even after *Woodford*, courts have continued to hold that some exceptions apply to the exhaustion requirement, particularly where defendants' conduct is such that they will be estopped from asserting the defense. *See Smart v. Goord*, 04 Civ.

8850, 2008 U.S. Dist. LEXIS 16053, *5-7 (S.D.N.Y. March 3, 2008)(citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)(plaintiff claimed, inter alia, that prison officials beat him, threatened him, and denied him grievance forms)); *Amador v. Superintendents of the Dep't of Correctional Svcs.*, 03 Civ. 650, 2007 U.S. Dist. LEXIS 89648, *14-24 (S.D.N.Y. Dec. 4, 2007)(discussing viability of exceptions to exhaustion after *Woodford*).

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement and specifying various instances in which the requirement could be waived or excused. *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004)(remanding case to determine if defendant's alleged threats constituted "special circumstances" justified plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)(whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004)(complete dismissal is not required

9

when plaintiff brings both exhausted and unexhausted civil rights claims).

Pursuant to these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill*, 380 F.3d at 686).  The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Without making specific rulings, or by ruling in the alternative, courts have continued to assume that there are exceptions to the exhaustion requirement.  In *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007), the Second Circuit cited *Woodford*, and also considered whether the defendants' actions would have estopped them from asserting the defense of non-exhaustion.  In *Amador*, the district court cited *Woodford*, recognizing that the "viability" of the Second Circuit's three-part inquiry might have been called into question, but continued to use the *Brownell/Hemphill*  factors to determine whether the exhaustion requirement could be waived.  Very recently, the Second Circuit has utilized this three-part test to determine

10

whether a plaintiff properly exhausted his remedies. *Davis v. State of New York*, 07-3262, 2009 U.S. App. LEXIS 3439, *2-3 (2d Cir. Feb. 20, 2009).

This court also notes that based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have not been overruled in that respect.  In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the Second Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 126 S. Ct. at 2393 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004))(Breyer, J. concurring).

Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a traditional exception that the statute implicitly incorporates." *Id.* (emphasis added).  This statement implies that there are still exceptions that a court may consider.  Thus, this court will proceed to consider whether plaintiff asserts any of the "traditional" exceptions to the exhaustion requirement.

In this case, defendants argue that plaintiff has not exhausted his

11

administrative remedies.  In his amended complaint, plaintiff states that on

August 18, 2007, he filed "a grievance," but that he never got a response.

AC ¶ 4(b)(i)-(ii).  Defendants have submitted the affidavit of defendant

Stearns, the Deputy Superintendent for Program Services at Bare Hill

Correctional Facility. Stearns Aff. (Dkt. No. 14-5).  In that affidavit,

defendant Stearns states that plaintiff did not file a "grievance" on August

18, 2007. Stearns Aff. ¶ 16.  Rather, on August 18, 2007, plaintiff submitted

a handwritten "Request for Reasonable Accommodation." Stearns Aff. Ex.

1 at 1.[7]  In this handwritten request,[8] plaintiff first mentions walking "so far"

and mentions not having a proper "shower area." *Id.*  Plaintiff then states

that due to his recent operation, he cannot walk or be "on [his] leg for any

long period of time." *Id.*  Plaintiff states that he requested the "Commissary"

but was denied, and he implies that he only accepted the program that he

was given because he was required to do so. *Id.*  He asked for "any help in

this matter." *Id.*

Defendant Stearns states that according to Department of

Correctional Services (DOCS) Directive No. 2614, inmates may file

---

[7] Defense counsel did not number the pages of defendant Stearns exhibit.  The court has cited the exhibit as if the pages were numbered.

[8] The document was addressed to defendant Stearns and was entitled "Request-Reasonable Accomidation [sic]." Stearns Aff. Ex. 1 at 1.

requests for reasonable accommodations with the Deputy Superintendent

for Services at the facility where the inmate resides. Stearns Aff. ¶ 5.

Defendant Stearns states that because plaintiff had not used the proper

form, Mrs. Christine Daggett, Acting Deputy Superintendent of Programs

sent plaintiff a memorandum, together with the appropriate form, and

advised plaintiff to complete the top portion of the form. Stearns Aff. ¶ 10.

Defendant Stearns has included that memorandum as part of Exhibit 1.

Stearns Aff. Ex. 1 at 2.

Plaintiff completed the form, and defendant Stearns received the form

on August 24, 2007.  Defendant Stearns has submitted a copy of plaintiff's

formal "Request for Reasonable Accommodation." Stearns Aff. Ex. 1 at 3.

Defendant Stearns states that Directive 2614 specifically states that any

inmate who "disagrees" with a decision on his or her request or feels that

they have been discriminated against based on a disability may submit

complaints pursuant to the Inmate Grievance Program, whose rules are

listed in DOCS Directive 4040. Stearns Aff. ¶ 7 (citing Subpt. V of DOCS

Directive 2614).  The formal request form advises inmates of the right to file

a grievance. Stearns Aff. ¶ 6 (citing Subpt. IV of DOCS Directive 2614).

A review of the form submitted by plaintiff shows that plaintiff

requested a "change of prog. or Facility which could accom. me better."

Stearns Aff. Ex. 1 at 3.  The form is signed by defendant Stearns on August

24, 2007. *Id.*  Plaintiff was informed by memorandum from defendant

Stearns, dated August 28, 2007, that plaintiff's request for reasonable

accommodation had been "sent to medical for evaluation." Stearns Aff. Ex.

1 at 6.  The memorandum also stated that "[p]rogram change requests

need to be addressed through S. Flanagan, Sr. Corrections Counselor." *Id.*

A "medical verification" appears on the "Request for Reasonable

Accommodation" form and is signed by Brian Connolly, M.D. on August 29,

2007. Stearns Aff. Ex. 1 at 3.  The medical verification section of the form

indicates that plaintiff had a "below knee amputation" and that he had

"impaired ambulation" with the ability to stand for less than one hour and

"gait" less than one block. *Id.*  The "Determination" section of the form is

signed by defendant Stearns on September 12, 2007, and the form states

that a request for plaintiff's transfer to a wheelchair-accessible facility was

being processed. *Id.*  The form also states that the doctor "recommended

removal from the mess hall." *Id.*

The bottom section of the form is the "Inmate Receipt."  The receipt

shows that plaintiff checked the box, stating that he ***agreed*** with the

14

determination.  The court would point out that clearly plaintiff agreed with the determination since he received exactly what he requested.  The inmate receipt section also states that "I understand my right to file a grievance in accordance with Directive # 4040, "Inmate Grievance Program." *Id.*

Defendants have also submitted the affidavits of Karen R. Bellamy, the Director of the Inmate Grievance Program and Richard P. Donaldson, the Inmate Grievance Supervisor at Bare Hill Correctional Facility. (Dkt. No. 14-3, 14-4).  Grievance Supervisor Donaldson states that his records show that plaintiff did not file any grievances during August and September of 2007. Donaldson Aff. ¶¶ 4-5.  Grievance Supervisor Donaldson also states that "[i]f a request for reasonable accommodation is denied by the Programs Office, the inmate may file a grievance over the denial of the request." *Id.* ¶ 11.  Director Bellamy confirms in her affidavit that plaintiff did not file any appeals of any grievances in 2007. Bellamy Aff. ¶ 5.

It is clear that plaintiff did not file a grievance that was unanswered as he states on his federal complaint form.  Plaintiff filed a "Request for Reasonable Accommodation," after which he was ***granted*** all the relief that he requested.  Defendants argue that because plaintiff did not file a

"grievance", pursuant to the Inmate Grievance Program, described above, this complaint must be dismissed for failure to exhaust administrative remedies.  Since plaintiff appears to have two distinct claims, the court will address exhaustion as to each claim.

### A.  Program Claim

Although defendants are ***correct*** that plaintiff did not file a "grievance", it is unclear why plaintiff would have filed a grievance after he had been granted all the relief that he sought.  The first question is whether a grievance was "available" to him to challenge the decision. *Brownell*, 446 F.3d at 311.  Since plaintiff obtained relief through his request for reasonable accommodation, there was no grievance to file.  In fact, according to Grievance Program Supervisor Donaldson, a grievance is available to challenge the ***denial*** of a request for reasonable accommodation. Donaldson Aff. ¶ 10.  If plaintiff obtained relief, a grievance was not "available", and plaintiff did all he could to bring his claims to the defendants' attention.

In *Abney v. McGinnis*, the Second Circuit held that the failure to "exhaust" would be justified if the plaintiff obtained relief through the grievance system, but that relief was not forthcoming. 380 F.3d at 668-69.

16

The court stated that when prison regulations fail to provide a remedy for "implementation failures," inmates who receive a favorable outcome to their initial grievance that remains unimplemented, have fully exhausted their administrative remedies. *Id.* at 669.

The Second Circuit distinguished *Abney* in *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). The plaintiff in *Ruggiero* wished to be separated from certain corrections officers who had allegedly mistreated him. *Id.* After an interview with investigators, Ruggiero was transferred to another facility, giving him the relief that he sought. *Id.* The court held, however, that notwithstanding the transfer, Ruggiero could have filed a grievance over his mistreatment. *Id.* The court stated that the question was not whether the inmate had a "reason" to file a grievance, but whether the grievance was "available." *Id.*

The court in *Ruggiero* cited *Braham v. Clancy*, 425 F.3d 177 (2d Cir. 2005),[9] in which an inmate had repeatedly requested a cell transfer because he was afraid that his cell-mate would assault him. *Id.* at 177 (citing *Braham*, *supra*). Prison officials ignored his requests, and Braham

---

[9] *Braham* was overruled on other grounds by *Macias* v. *Zenk*, 495 F. 3d at 43-44. *Braham* was overruled to the extent that it allowed for exhaustion by taking "'enough' informal steps 'to put prison officials on notice' of their concerns, regardless of whether they utilize the prison's formal grievance procedures." *Macias*, 495 F.3d at 44.

never filed a grievance. *Id.*  Braham was ultimately assaulted by his cell-mate and finally transferred to another cell. *Id.*  Braham claimed that his transfer obviated the need for him to file a grievance. *Id.*  The Second Circuit disagreed and held that even after Braham had been transferred, a formal grievance would have allowed prison officials to reconsider their policies and discipline any officer who had failed to follow existing policies. *Id.* (citing *Braham*, 425 F.3d at 182-83).

In this case, however, plaintiff obtained the relief he wanted through his Request for Reasonable Accommodation.  Although plaintiff was initially told that program changes needed to be addressed through defendant Flanagan, defendant Stearns's response to the Request for Reasonable Accommodation granted the program change as well. Stearns Aff. Ex. 1 at 3.  Defendant Stearns's determination specifically states that the doctor recommended removal from the mess hall.  Thus, plaintiff had nothing to challenge in a grievance or before the Program Committee.

Unlike the plaintiff in *Ruggiero*, who could have filed a grievance complaining about the harassment to which he had been subjected by the officers in question even after Ruggiero had been transferred, plaintiff in this case had no mechanism to complain because all of his complaints had

18

been resolved.  His complaints may have not been resolved quickly enough or to plaintiff's liking, but there were no available mechanisms left to pursue.

Although defendants argue that plaintiff should have filed a grievance because he was told that he could do so in the determination of his request for reasonable accommodation, the Donaldson affidavit states that if a request for reasonable accommodation is "***denied***", the inmate may file a grievance over the "***denial***."  Plaintiff's request was not denied, thus, it appears that no grievance was "available" to him, and he has exhausted his administrative remedies with respect to the program assignment and the transfer to a wheelchair-accessible facility.

The court notes that in *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court made it clear that the exhaustion requirement applied even when the administrative remedy could not award the plaintiff the "specific relief" he was seeking, however, courts have stated that the Supreme Court did not intend that holding to extend to cases in which the administrative remedy could not afford plaintiff ***no relief***. *Gomez v. Winslow*, 177 F. Supp. 2d 977, 983-85 (N.D. Cal. 2001). *See also Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002); *Collins v. Mendoza-Powers*, 2007

19

U.S. Dist. LEXIS 76455, *13-14 (E.D. Cal. Oct. 1, 2007)(citing *Ruggiero*,

467 F.3d at 176 (explaining *Abney v. McGinnis*, 380 F.3d 663)).  This court

does not find that *Woodford* would compel a different result.

### B.  Housing Claim

This court finds plaintiff's second claim to be unexhausted.  Plaintiff

claims that when he returned from the hospital after surgery, defendant

Stearns allegedly placed plaintiff in a housing unit where he would have to

walk to get his bandages changed.  This placement "caused" plaintiff to fall

on the way to get his bandages changed.  This claim was ***never grieved at***

***any level or challenged using any administrative remedy***.  Plaintiff

seems to think that his fall was somehow related to plaintiff's improper

program assignment.  He states in his amended complaint that if he had

not been placed in the "hazardous program," he would not have suffered

these "further injuries" upon his return from the hospital. However, the

relationship between the two incidents is tenuous at best.

This court finds that plaintiff's claim that he was placed and kept in an

improper program until he was injured has been exhausted, while his claim

that he was placed in an improper or unsafe housing unit based on his

medical condition has not been exhausted and must be dismissed.  Having

made these rulings, the court makes no findings on the ultimate merits of the remaining claim. Defendants have only argued that the claims are unexhausted, and the exhaustion issue is the extent of this court's ruling. A scheduling order shall be issued in this case, providing for time to file further dispositive motions if desired.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that defendants' motion for summary judgment (Dkt. No. 14) is **GRANTED IN PART**, and plaintiff's claim regarding his placement in the improper housing unit is **DISMISSED AS AGAINST BOTH DEFENDANTS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**, and it is

**ORDERED**, that defendants' motion for summary judgment (Dkt. No. 14) is **DENIED IN ALL OTHER RESPECTS;** and it is further

**ORDERED**, that this matter is referred to the Magistrate Judge for the issuance of a scheduling order.

**IT IS SO ORDERED.**

Dated: March 4, 2009

_____
United States District Court Judge