UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN COOKE,

                                 Plaintiff,

    vs.                                                   9:07-CV-1292
                                                           (GLS/ATB)
STERN, Supt. Programs,
  Bare Hill Correctional Facility,[1] and
MS. S. FLANAGAN,

                                 Defendants.
_____

JOHN COOKE, Plaintiff pro se
CHRISTOPHER W. HALL, Ass't Attorney General, for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

    This matter was referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, United States District Judge. On January 4, 2010, the case was re-assigned to me, following the retirement of Magistrate Judge Gustave J. Di Bianco.

    In this amended civil rights complaint ("AC"), plaintiff alleges that the two remaining defendants[2] were deliberately indifferent to his health and safety when they

---

[1] This defendant's last name is actually "Stearns," and this court will refer to him as such.

[2] Judge Sharpe previously dismissed all claims against defendant K. Mullerville, R.N. without prejudice, because the amended complaint failed to allege any involvement of Nurse Mullerville in the purported violation of plaintiff's constitutional rights. (Dkt. No. 8). In a Memorandum Decision and Order dated March 4, 2009 (Dkt. No. 16), Judge Sharpe partially granted defendants' first summary judgment motion (Dkt. No. 14). He dismissed, for failure to exhaust administrative remedies, a claim that defendant Stearns further violated plaintiff's Eighth Amendment rights by assigning him to a housing unit that was inappropriate, given that plaintiff had just returned from the hospital following surgery.

improperly assigned him to a particular work detail at Bare Hill Correctional Facility ("Bare Hill") that was not appropriate, given his physical disability. (Dkt. No. 7). Plaintiff, now released from custody, seeks substantial monetary damages. (*Id.*).

Presently before this court is defendants' second motion for summary judgment, pursuant to FED. R. CIV. P. 56. (Dkt. No. 24). Defense counsel argues that neither name defendant was personally involved in the decision to assign plaintiff to his work program, and that plaintiff cannot establish that the defendants were deliberately indifferent to his health and safety.

Plaintiff initially failed to respond to the second summary judgment motion. Upon learning of the possibility that plaintiff had not received the motion[3], the court took steps to verify plaintiff's current mailing address and to serve him (perhaps for a second time) with the relevant papers. (*See* Text Orders dated 7/14/2010 & 7/20/2010). Only July 26, 2010, plaintiff submitted a confirmation of his new mailing address and provided some documents responsive to the summary judgment motion.

---

[3] When plaintiff was deposed on August 13, 2009, defense counsel questioned plaintiff, who had by then been released from custody, about his plans to move to a different apartment. Plaintiff was reminded that he was required to notify the court and the parties of any change of address. (Pltf. Deposition ("Dep.") at 10-11, Dkt. No. 24-4). On November 6, 2009, the defendants served their second summary judgment motion on plaintiff by mail, directed to a new address that plaintiff provided to defense counsel by telephone, without advising the court. (Notice of Motion, Dkt. No. 24 at 3-4; Hall Attorney Affirmation ¶¶ 2-14, Dkt. No. 26). Although defense counsel had no indication that the summary judgment motion had not been received by plaintiff, counsel was advised by telephone in early December 2009 that plaintiff had yet another new mailing address. (Hall Aff. ¶ 15). Although it was not his obligation to do so, defense counsel apparently did not follow up with plaintiff to ensure that he received the summary judgment motion. *Dumpson v. Goord*, 00-CV-6039, 2004 WL 1638183, at *3 (W.D.N.Y. July 22, 2004) ("The demand that plaintiffs provide contact information is . . . the obvious minimal requirement for pursuing a lawsuit.").

2

(Dkt. No. 29). On July 27, 2010, plaintiff telephoned my chambers to confirm his receipt of defendants' summary judgment motion, and to advise the court that he did not intend to file any further response. (*See* Text Order dated 7/27/2010).

Although this court originally gave plaintiff until August 20, 2010 to file a response to the summary judgment motion, it is ripe for decision now, given that plaintiff has indicated that he does not intend to file any further response. For the following reasons, this court recommends that the defendant's motion for summary judgment be granted and the sole remaining claim in the amended complaint dismissed in its entirety.

## DISCUSSION

**I.   Facts**[4]

Plaintiff's right foot and some of his right leg were amputated and replaced by a prosthesis shortly before he was returned to state prison in August 2007, following a parole violation. (Pltf. Deposition ("Dep.") at at 27-28, 31-33, Dkt. No. 24-4). Plaintiff claims that, on August 18, 2007, he was assigned to work as a cook in the mess hall at Bare Hill by defendant Sharon Flanagan, who was in charge of the Program Committee. (AC, Dkt. No. 7 at 1[5]; Dep. at 22-25, 46-47, 56-61). Plaintiff

---

[4] This court will review only the facts and procedural history relevant to the pending summary judgment motion. In his Memorandum Decision and Order dated March 4, 2009 (Dkt. No. 16), Judge Sharpe more fully discusses the facts and procedural history of this and the related case (No. 9:09-CV-74).

[5] Because the paragraph and page numbering of the amended complaint is inconsistent, the court will reference the page numbers created by the CM-ECF system, which appears in the header of the filed document.

states that he asked the Program Committee not to be assigned to the mess hall because it was difficult for him to stand and walk on his prosthetic leg, and because he didn't want "to move around and put pressure on [that] leg . . . ." (AC at 1, 7; Dep. at 22-24). Plaintiff asked to work in the commissary or at a job outside, but the sergeant stated that neither job was available. (Dep. at 60-61). One of the female committee members then told plaintiff there was an opening for a cook in the mess hall, and "you take it or you do not take it." Plaintiff said he would take it because he knew he would not be at Bare Hill "for long." (Dep. at 61).[6]

Defendants have submitted documentation indicating that plaintiff actually met with the Bare Hill Program Committee on August **16**, 2007, not Saturday, August **18th**, as plaintiff contended. (Flanagan Aff., Dkt. No. 24-3, ¶¶ 5-8, 11-13 & Ex. A; Stearns Aff., Dkt. No. 24-2, ¶¶ 13-16, 25-26 & Ex. A).[7] According to plaintiff, a male sergeant and two women were committee members that day. (Dep. at 24-25, 56-57). Plaintiff knew that "Ms. Flanagan was in charge of the program . . ." (Dep. at 58), and believed that she was the woman who appeared to be running the committee meeting. (Dep. at 57-59, 63-64). Plaintiff could not describe the woman at the meeting he believes was Ms. Flanagan, except to note she was " Caucasian." (Dep. at 63-64).

---

[6] Plaintiff had prior training and experience as a cook, both in and out of prison. (Dep. at 29-30). During his deposition, plaintiff stated he "did not mind working in the kitchen," (Dep. at 35); but he also was concerned that, if he turned down his work assignment, he would be assigned to segregated housing and subject to discipline and/or a delay in his eventual release (Dep. at 49-50, 53-54).

[7] This committee would not meet on weekends. (Flanagan Aff. ¶¶ 11-13; Stearns Aff. ¶ 26 & Ex. B)

Defendant Flanagan was, in fact, in charge of the program committee and would normally preside at meetings to make program assignments to inmates. (Stearns Aff. ¶ 20; Flanagan Aff. ¶ 10). However, defendants submitted extensive documentation indicating that defendant Flanagan was not at work on August 16, 2007, and did not participate in the meeting that resulted in plaintiff's assignment to work in the mess hall. (Flanagan Aff. ¶¶ 5-10, 14-19, & Exs. A, B; Stearns Aff. ¶¶ 13-16, 18-24, & Exs. A, B).[8] The record documenting the decision of the Program Committee assigning plaintiff to the mess hall detail was dated August 16, 2007 and was signed by someone other than defendant Flanagan, who would, as the committee chair, sign such forms on days that she worked. (Flanagan Aff. ¶¶ 5-10 & Ex. A).

Defendant Stearns was the Deputy Superintendent for Program Services at Bare Hill, and supervised the Program Committee. However, he was "not a member [of that committee] and ha[d] no direct involvement in its meetings and decisions." (Stearns Aff. ¶ 9). He "was not present at the Committee meeting [on August 16th] and had nothing to do with the Committee's decision to assign Cooke to the mess hall." (Stearns Aff. ¶ 17). Plaintiff admitted as much during his deposition. (Dep. at 75, 82).[9]

About a week before plaintiff met with the Program Committee, he had been

---

[8] Defendant Flanagan submitted a copy of her employee time sheet showing she had taken eight hours of personal leave the day plaintiff met with the Program Committee. (Flanagan Aff. ¶¶ 14-16 & Ex. B). Defendant Stearns also noted her absence on August 16, 2007 on his personal calendar for that day. (Stearns Aff. ¶¶ 18-23 & Ex. B).

[9] *See* Dep. at 75 ("Mr. Sterns doesn't assign people to a program. He is the director of programs . . . ."); 82 (Stearns not at committee meeting and had no role in mess hall assignment).

cleared by the medical department at Bare Hill to work in the mess hall. (Stearns Aff. ¶¶ 33-35 & Ex. E). Plaintiff recalled being interviewed and examined by a nurse, but opined that it was not a thorough examination, and he disagreed with her conclusion that he was physically able to do mess hall work. (Dep. at 34-42, 48). He told her about his recent surgery and said he could not do strenuous work. (Dep. at 37, 41). Plaintiff told the nurse he was able to participate in programs, but claims that neither he, nor the nurse, specifically discussed mess hall work. (Dep. at 36, 41).

On August 18, 2007, plaintiff submitted a handwritten "Request for Reasonable Accommodation," and was instructed to re-submit his request on the proper form, which plaintiff did on August 24th. (3/4/2009 Memo. Decision and Order of Judge Sharpe, Dkt. No. 16, at 12-13; AC at 10). Plaintiff requested a change in program and facility due to the problems with his right foot and leg. (*Id.* at 13-14; AC at 10). The request was forwarded to the medical staff for evaluation on or before August 28, 2007.[10] On September 11, 2007, Dr. Connally, a facility physician, told Defendant Stearns "that Mr. Cooke's leg was infected, that Cooke was not caring for it properly and that he should be transferred to a wheel chair access facility." (Stearns Aff. ¶¶ 27-29 & Ex. C; AC at 10). On September 12th, defendant Stearns signed the "Determination" section of the form which stated that plaintiff's transfer to a wheelchair-accessible facility was being processed, and noted that the doctor had

---

[10] Plaintiff was initially advised in a 8/28/07 memorandum from defendant Stearns that his request for a program change needed to be addressed through defendant Flanagan. (*Id.* at 14; Dep. at 73). Plaintiff claims that he wrote defendant Flanagan to request a change of programs and was denied. (Dep. at 73, 75, 90-91). No copies of such correspondence have been provided to the court.

6

recommended removal from the mess hall work assignment. (3/4/2009 Memorandum Decision and Order at 14; AC at 10). In the "Inmate Receipt" portion of the form, plaintiff stated that he agreed with defendant Stearns's determination. (*Id.* at 14-15; AC at 10).

Plaintiff believes that, on or about September 12, 2007, the medical staff at Bare Hill found that the area where his leg had been amputated was infected. (AC at 1; Dep. at 78, 87-88). Plaintiff has acknowledged that, as soon as defendant Stearns became aware of the infection in plaintiff's leg, plaintiff was removed from his mess hall work assignment. (Dep. at 79-80, 85; Stearns Aff. ¶¶ 27-30). Plaintiff also admitted that the woman who assigned him to work in the mess hall (whom the plaintiff believed to be defendant Flanagan), was not trying to harm him or cause him any physical pain. "She simply didn't know. She couldn't know because she didn't read the [medical] chart." (Dep. at 81).

On October 17, 2007, plaintiff was running a temperature of 104 degrees and was transferred to Alice Hyde Medical Center, and then to Albany Medical Center, for evaluation. (AC at 1; Dep. at 82). Apparently, the infected part of the leg was then surgically removed. (AC at 1; Dep. at 85). Plaintiff was returned to Bare Hill where he was required to walk on crutches to obtain follow-up medical care. On October 31, 2010, he fell on a walkway while en route to the infirmary to change the dressing on his leg, suffering further injury. (AC at 4; Dep. at 84-85).

## II. **Summary Judgment**

As noted above, plaintiff's only remaining claim is that defendants Stearns and

Flanagan violated his Eighth Amendment rights by assigning him to a mess hall work detail.  Defendants seek summary judgment, arguing that they were not personally involved in plaintiff's program assignment, and that plaintiff cannot establish that they acted with deliberate indifference to plaintiff's health and safety.  For the reasons stated below, this court agrees with the defendants' position and recommends that summary judgment be granted, and that the remaining claim in the amended complaint be dismissed in its entirety.

### A.     Legal Standard for Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467

F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272. "[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (citing, *inter alia*, *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest")). "However, a pro se party's "bald assertion," completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)). While a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous review of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).[11]

---

[11] The liberal pleading standards for *pro se* litigants do not excuse them from following the procedural formalities of summary judgment. *Govan v. Campbell*, 289 F. Supp. 2d at 295. Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." This rule may be applied against *pro se* litigants; and a court is not obliged to conduct an independent review of the record to find proof of a factual dispute where, as here, a *pro se* plaintiff has failed to respond to the summary judgment motion in accordance with the

9

## B. Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (stating that defendant could be liable under section 1983 if he failed to remedy constitutional violation after learning of it or was grossly negligent in managing subordinates who caused violation); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

---

applicable rules. *Id.* However, given the history relating to the service of the summary judgment motion, this court has considered plaintiff's amended complaint and his deposition testimony in determining whether there are material issues of fact in dispute.

### 1. Defendant Stearns

Defendant Stearns lacked personal involvement in the Program Committee's decision to assign plaintiff to the mess hall because, as noted above, he was not a member of the committee and had no direct involvement in its meetings and decisions. He cannot be deemed personally involved in the decisions of the Program Committee merely because he supervised it. *See, e.g.*, *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.2003) (doctor who oversaw the facility's medical staff could not be deemed personally involved in the decisions merely because of his supervisory status).

When defendant Stearns first learned, from a staff physician, that plaintiff's work assignment was inappropriate given his medical condition, he promptly directed that plaintiff be removed from his mess hall job. Plaintiff has made no allegation, much less a plausible showing, that defendant Stearns created a relevant custom or policy or was grossly negligent in his supervision of subordinates who made plaintiff's job assignment. In short, defendant Stearns cannot be liable for plaintiff's job assignment because there is indication that he was "personally involved." *See, e.g.*, *Wilson v. Johnson*, 999 F. Supp. 394, 400 (W.D.N.Y. 1998) (facility superintendent was not personally involved in the work assignment of an inmate when there was no evidence indicating he was advised about any health risk connected to the job assignment, that he was so advised and failed to take corrective action, that he created or carried out a policy exposing inmates to unsafe work assignments, or that he was grossly negligent in supervising subordinates).

### 2.     Defendant Flanagan

As discussed above, the defendants have submitted persuasive documentary evidence to corroborate defendant Flanagan's sworn affidavit that she did not participate in the assignment of plaintiff's work detail because she was not working on the day the Program Committee met with him. Plaintiff's claims that defendant Flanagan presided at the meeting during which he was assigned to work in the mess hall are inconsistent and appear to be based on a mere assumption that she must have been present because she was the chair of the committee. (Dep. at 24, 57-59).[12] In light of the overwhelming contrary, documentary evidence, plaintiff's conclusory allegations of defendant Flanagan's personal involvement in his job assignment are not sufficient to create a material issue of fact. *See, e.g.*, *Mccloud v. Roy*, 9:08-CV-839 , 2010 WL 985731, at *7 (N.D.N.Y. Feb. 22, 2010) (plaintiff's conclusory allegation that he requested a bottom bunk placement from prison doctor is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record); *Benitez v. Pecenco*, 92 Civ. 7670, 1995 WL 444352 at n.5, (S.D.N.Y. July 27, 1995) (plaintiff's conclusory allegation that he was never issued medication was directly contradicted by medical records and

---

[12] *See e.g.,* Dep. at 24 ("I don't know the . . . name [of the 'lady' who said 'you are going to be assigned in the mess hall']. I know she was assigned to, she was the head person at that program. I would say it would be Ms. Fine (phonetic) as far as I know going by what I wrote."; 57 ("I was introduced to everybody and I know that Ms. Flanagan was there. . . . Why I'm so keen on Ms. Flanagan is because she was the head person."); 58 (". . . I don't remember the women, I don't remember the sergeant. . . . So Ms. Flanagan was in charge of the program and if you had any reason write Ms. Flanagan for change of program, that's what you would do. . . . I didn't just pull Ms. Flanagan's name out of a hat."; 59 ("the reason I named her because she is the one that assigned people.")

was insufficient to create a factual dispute on that issue) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")).[13] *See also Atkinson v. Fischer*, 9:07-CV-368 (GLS/GHL), 2009 WL 3165544 at *11, 2009 (N.D.N.Y. Sept. 25, 2009) (granting summary judgment in favor of defendants who were not in any way involved in inmate plaintiff's job assignment).

In his deposition, plaintiff also makes conclusory and unsupported claims that, on several occasions after his meeting with the Program Committee, he wrote defendant Flanagan "requesting a change of programs due to the fact it's strenuous to me." (Dep. at 91). Given that none of this alleged correspondence has been submitted to the court, the court concludes that plaintiff's conclusory allegations are insufficient to establish defendant Flanagan's personal involvement in failing to change his program placement during the month or so he worked in the mess hall. *See, e.g.*, *Wilson v. Johnson*, 999 F. Supp. at 400. In any event, as discussed below, there is no indication that, even if defendant Flanagan declined to change plaintiff's placement based on his general complaints, she could be found deliberately indifferent to his health and well-being.

---

[13] *See also Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account." (citation omitted)).

13

### 3. Unnamed Potential Defendants

Although defendants Stearns and Flanagan were not personally involved in the initial decision to assign plaintiff to a mess hall work assignment, there were clearly several other unidentified staff members at Bare Hill who were. In *Davis v. Kelly*, the Second Circuit discussed the circumstances under which a court should not dismiss otherwise colorable section 1983 claims against supervisory personnel who deny personal involvement until a *pro se* plaintiff has been afforded an opportunity, through at least brief discovery, to identify the subordinate officials who have personal liability. *Davis v. Kelly*, 160 F.3d 917, 920-21 (2d Cir. 1998). The *Davis* court held:

> . . . [W]hen a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery.

*Davis v. Kelly,* 160 F.3d at 922.

In this case, the dismissal of plaintiff's claim should not be delayed, based on *Davis*, to provide him an opportunity to conduct further discovery to identify those who were personally involved in his job assignment. First, *Davis* involved the decision to transfer of an inmate from one facility to another. Because of security issues related to prison transfers, the decision-making process is not transparent to inmates; the identity of the decision makers and the reasons for the transfer are often not disclosed. Hence, inmate plaintiffs might understandably have difficultly identifying who was involved in their transfer. *See, e.g., Smith v. Greene*,

9:06-CV-505, 2010 WL 985383, at *5-8 & n.7 (N.D.N.Y. Feb. 3, 2010). This case involves prison job assignments, for which the process is more transparent. The decision relating to plaintiff's job assignment was made in his presence by a committee of three individuals, who, plaintiff claims, introduced themselves to him. (Dep. at 57). With a level of diligence reasonable for a *pro se* litigant, the plaintiff could have correctly identified the facility staff members involved in his job assignment if he chose to do so.

Furthermore, for the reasons discussed below, plaintiff's pending claim that his Eighth Amendment rights were violated is not "colorable" because he cannot establish that the actual members of the committee acted with deliberate indifference to his health and welfare. As noted above, the medical staff at the prison had cleared plaintiff for a mess hall job assignment before the committee met, so they had no reason to know that such an assignment might be detrimental to his health.

### C. Eighth Amendment Claim

#### 1. Legal Standards

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994). To establish an

Eighth Amendment claim based on unsafe or medically inappropriate working conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer*, 511 U.S. at 834. Plaintiff's claim may also be analogized to a claim for inadequate medical care, which similarly requires proof of deliberate indifference. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987) (prisoner alleged Eighth Amendment medical claim when he alleged that prison guards deliberately ignored doctor's order that prisoner pursue exercise in prison gym); *Atkinson v. Fischer*, 2009 WL 3165544 at *11 (applying Eighth Amendment standards for medical care in analyzing claim that plaintiff was assigned to a prison job that was inappropriate, given his medical condition).

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994). Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Hathaway*, 37 F.3d at 66 (quoting *Wilson v. Seiter*, 501 U.S. at 298). An inmate may satisfy the objective prong by alleging that his prison work duties created a substantial risk of serious injury or harm. *Howard v. Headly*, 72 F. Supp. 2d 118, 123-124 (E.D.N.Y. 1999) (collecting cases).

The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct

undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 835. In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Hathaway*, 37 F.3d at 66. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*.

### 2. Application

As discussed above, during the month or so he worked in the mess hall, the plaintiff developed an infection in the area above where his foot had previously been amputated. When he was re-examined by the medical staff, a prison doctor determined that the mess hall assignment was no longer appropriate given plaintiff's medical condition. Plaintiff ultimately required surgery to remove another six inches or so of his leg stump. However, the prison doctor concluded that plaintiff's infection was caused, in part, by plaintiff's failure to properly care for his surgery wound. Furthermore, plaintiff admitted that, even before he returned to prison, he was advised that he would require additional surgery to remove another several inches of his leg stump. (Dep. at 28, 32-33). While it is unnecessary to decide the issue, this court will assume for the purposes of this decision that there was a material issue of fact regarding whether plaintiff's initial work assignment exposed him to a substantial risk of further injury and harm. However, to avoid summary judgment, there must also be a genuine issue of fact regarding whether the defendants were aware of a substantial risk of harm to plaintiff from his work assignment and knowingly disregarded that risk.

Plaintiff has not come forward with any evidence to overcome the defendants' showing that they, and the other prison officials who may have been involved in plaintiff's work assignment, did not act with deliberate indifference to his health and safety. When the members of the Program Committee (which did not include defendant Flanagan) initially assigned plaintiff to work in the mess hall, they relied upon the judgment of the prison medical staff,[14] which specifically cleared plaintiff for that job placement.[15]  *See, e.g.*, *Wilson v. Johnson*, 999 F. Supp. at 399-400 (finding no issue of fact suggesting deliberate indifference relating to plaintiff's job assignment where there was no significant evidence of medical (back) problems at the time of the initial assignment). Plaintiff admitted that the woman presiding at his Program Committee meeting was not trying "to kill me or cause me any physical pain." "She simply didn't know." (Dep. at 81).

Plaintiff alleges that defendants Flanagan and Stearns ignored his appeals to

---

[14] *See* Dep. at 59 (the woman presiding at the Program Committee meeting who made plaintiff's job assignment had his medical charts).

[15] While there are no remaining named defendants who might have been involved in the original medical clearance of plaintiff to work in the mess hall, there is no indication that the nurse who made that medical judgment acted with deliberate indifference to plaintiff's health. Plaintiff complains that the nurse did not perform a sufficiently thorough examination of him and he clearly disagreed with her ultimate decision. However, he alleges nothing to suggest that the nurse knew of, and deliberately disregarded, a substantial risk of serious medical harm from his job assignment. (Dep. at 35-42, 48). Plaintiff told the nurse he could participate in programs and "walk around," although he claims they did not discuss the feasibility of mess hall work. (Dep. at 36, 42, 48). Even if the original examination of plaintiff and his work clearance constituted malpractice, that would not suffice to support an Eighth Amendment claim of deliberate indifference. *See, e.g., Estelle v. Gamble*, 429 U.S. at 100-101, 106-107 (inmate who alleged doctors did not credit his repeated assertions that severe back pain should preclude him from manual labor did not state a claim for deliberate indifference where the medical staff repeatedly saw and treated him, even if their lack of diagnosis and inadequate treatment constituted malpractice).

18

remove him from his job assignment for health reasons after the initial assignment. Even if plaintiff's unsupported allegations regarding his written requests to defendant Flanagan are credited, he only told her that his work was "strenuous" (Dep. at 91), which hardly put her on notice that he was being exposed to a serious infection involving his amputated leg. *See, e.g.*, *Wilson v. Johnson*, 999 F. Supp. at 400 (corrections counselor was not involved in any constitutional violation involving inmate's job assignment when his complaints about his mess hall job did not mention the back problems that he now alleges were aggravated by the work). When defendant Stearns learned of plaintiff's infection, he promptly had him removed from the mess hall work detail.[16] Plaintiff conceded that Stearns "was pretty decent" in how he addressed his request for accommodations. (Dep. at 95). Even assuming that plaintiff's various claims about the defendants' intentions are true and accurate, he has provided nothing to suggest that they acted with deliberate indifference. Hence, even if the named defendants were personally involved in plaintiff's job assignment, this court would still recommend dismissal of the pending Eighth Amendment claim.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 24) be **GRANTED** and the remaining claim in the amended complaint be **DISMISSED IN ITS ENTIRETY.**

---

[16] *See, e.g., McCray v. Coughlin*, 101 F.3d 1392 (table), 1996 WL 368722 at *2, (2d Cir. 1996) (prison doctor who revoked plaintiff's "general pass," requiring him to seek specific permission before he would be excused from a work program, did not act with deliberate indifference, particularly when he subsequently issued a month-long direction excusing plaintiff from lifting more than 20 pounds)

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: August 2, 2010

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge